Case number 23-1744, United States of America, ex-railed Mark G. O'Connor and Sarah F. Liebman, and Mark G. O'Connor and Sarah F. Liebman, balanced versus USCC Wireless Investment, Inc, EDA. Mr. Woufter for the balance, Mr. Tutomilo for the appellees. Good morning, Ms. Woufter. Good morning, your honors. I'm Daniel Woufter, appearing on behalf of the appellant relatives, Mark O'Connor and Sarah Liebman. I'd like to reserve three minutes for rebuttal, please. The district court dismissed this case under the public disclosure bar based on a 2008 complaint that was unsealed in 2009. Because the allegations in this case are not substantially the same as those in the 2008 complaint, that was wrong. Relators allege they independently uncovered, long after that complaint was unsealed and voluntarily dismissed, that King Street secretly agreed to transfer a disqualifying amount of its spectrum to USCC in 2011. And then it hid that 2011 agreement from the FCC so that it would not compromise its over $100 million in discounts it received to purchase the licenses. Even those frauds that the prior complaint did disclose were voluntarily communicated to the government by Relator Mark O'Connor before that complaint was unsealed. This case is thus the opposite of a parasitic lawsuit that should be dismissed under the public disclosure bar. Relators' 2015 comm-search study showed not only that the spectrum was in use by one single network across USCC and King Street licenses, but it also showed that the network signal was coming from cell towers that were owned or leased by USCC, not King Street. This was a per se violation of the FCC's attributable material relationship or AMR rule, governing transactions a designated entity must report during its post-licensing unjust enrichment period. At the same time, Relators were voluntarily communicating with the government about that, which prompted a second DOJ investigation. Relators uncovered that USCC, in a separate license auction, described a fictitious agreement that it claimed to have with King Street in 2012, for only a tiny portion of the King Street spectrum USCC already controlled under the hidden 2011 agreement. Even then, King Street itself did not submit or even describe either the real or the fake agreement in its submissions to the FCC, which it was independently required to do in its annual reporting during the unjust enrichment period. That isn't all. Relators also conducted market research and interviews and obtained customer contracts from USCC stores and three King Street markets, which led them to discover that USCC was offering wireless services to the consumers in the King Street markets under USCC's name, not King Street. The local construction permits that were filed to meet King Street's build-out obligations were filed by USCC, and antenna in the King Street licensed areas were owned and registered under USCC alone. These discoveries- Mr. Woodford, this information, I mean, there was a lot of information in the FCC and SEC filings in this case that suggested, I guess, the X and the Y that would lead to an inference of fraud. And so while the relators here have uncovered other facts sort of surrounding those allegations, I mean, how do they substantially add to what was already in the public record? Are you referring to the FCC and SEC documents that were submitted in 2014? Okay, so I was addressing the 2008 complaint, but regarding those documents, which the district court did not rely on in this case, and I think it's quite important to note the defendants are relying on those documents and not seriously defending the district court's reasoning. They do not disclose anything about how King Street transferred a disqualifying amount of its spectrum in 2011. And if they did, King Street would have had to repay its licenses. And I think that the comm search study I was just describing is really indicative of that. You know, and in fact, when the DOJ was doing its investigation, and remarkable here, we're talking about a lot of facts that are outside of the complaint. And I think that's also something to note. You know, this is an affirmative defense. Defendants do not dispute that. So as I'm speaking, I may be referring to facts that aren't in the complaint that we could absolutely allege on remand if this court thinks it's necessary to establish that this is not a public disclosure. But so when we give that information to the government, the government conducted the second investigation. We then also gave information to the government about how we found this 2012 agreement that USCC submitted in a separate auction that only described a non-disqualifying amount of spectrum transfer. And when the government went back to USCC and said, you know, the relators in this case have said that everything you're describing about the 2012 agreement doesn't comport with what's actually happening on the ground, only then did they finally turn over the 2011 agreement to the government. They had never previously done that, and the government gave that to us. And that's what we used to make the allegations about the secret 2011 transfer in the current complaint. Now, the district court looked at the, just accepted the defendant's description that they're basically the same. It said, because the 2012 agreement showed that during the unjust enrichment period, this spectrum would be used to a very non-disqualifying degree by USCC. That's no different than the fake, or the real agreement that happened a year earlier that showed a disqualifying amount of spectrum under the rule, but that can't be the case, or else the FCC would not have granted the licenses and would not have approved that they retained the $100 million in bid credits. Also important to note, in 2018, the King Street and USCC asked the FCC for approval to sell those licenses. As far as to USCC formally, that application remains pending. We're unaware of any application like that that's gone and challenged that the FCC has held without deciding for this long. I think that, to the extent the court wants to think about anything outside of the complaint, there's actually quite a bit here that shows that what our relators discovered in their independent discoveries is material to the government and was not disclosed in any of these public filings in the FCC or SCC. And in fact, back to the 2008 complaint, those fraudulent transactions that were alleged in 2008 aren't substantially the same as the pre-licensing auction frauds that the 2008 complaint alleged because the unjust enrichment fraud pleaded now could not have even plausibly been alleged in the 2008 complaint because the transactions that violated the AMR rule and the Macy rules had not yet occurred, and they couldn't because the FCC had not approved King Street as a designated entity entitled to bid credits. So it hadn't entered an unjust enrichment period where it would violate those rules. Does the 2008 complaint, though, say that the alleged fraud was obtaining the licenses and continuing to use those licenses with the discount? No, the 2008 complaint says it was obtaining the licenses and then retaining them by parking them with the designated entities until such time as they could be formally transferred to USCC. Isn't the retaining it part of the 2008 complaint? Even if this court believed that as to King Street, what that does not say is that it wouldn't just retain them but that it would actually then just formally or give them in a secret agreement in 2011 to USCC without telling the FCC about that. That's an entirely different violation of the rule than an agreement to retain them until the unjust enrichment period is over. They didn't wait until that time, they did it in 2011. It's a different regulation in the FCC scheme, the attributable relationship as opposed to the de facto control. So if that's how we look at it, you have a pretty strong argument. But why shouldn't we think of this? I mean, this whole thing we're talking about is the allegation is that a very big company conspired to set up these sham front companies to obtain licenses fraud with the bid credit fraudulently. And I mean, if that's what's going on, it's just baked into that, that they're obtaining the licenses in order to use. I don't think- And what you're specifying is sort of just the completion of that scheme. I don't think- When the company, sorry again. No, no, no, no worries, you're on. When the company, when the big company actually uses those licenses for its own benefit. Perhaps that might be true as to USCC, your honor. It would not be true of these individual designated entities which are also defendants, as we'll talk about in a little bit in the Advantage case. If that's true here, that would bar the Advantage complaint and Advantage did not even exist for 10 years until after this auction. And there was no relationship with this other scheming defendant, William Vail. Sorry, let's just stick with King Street for now. I didn't get the distinction between, and answering my question, you said, well, maybe that's right as to US Cellular, but not as to King Street or who was the missing article. And as to this case, and that was just the first part of my answer. The other part of my answer is, if you look at the text of the amended public disclosure bar, it says substantially the same transactions. It is not substantially the same transaction, fraudulent transaction to say that the transfer that occurred in 2011 after that prior complaint was dismissed is substantially the same as any of the transactions alleged in the 2008 complaint, because it's just a transaction that had not occurred if we had pled in 2008. I think a better way to think about this is if our relators had pled in 2008, that we anticipate that in 2011, during the, or let's just say during the unjust enrichment period, the King Street will not only retain the bid credits until after the unjust enrichment period, it will actually secretly transfer those licenses to USCC during the unjust enrichment period. I think that would be an implausible allegation based on speculation, right? That had to have occurred, defendants, or I'm sorry, our clients had to discover it and share it with the government. And it prompted a second investigation, which itself I think is very good indication that it is not substantially the same allegation. There are a lot of cases under the 1986 statute. It says based upon the judicial gloss is substantially similar. And there are a lot of cases saying that if something is continuing the fraud, implementing it, you're supplying additional details, none of that is good enough. Are you saying that that law is no longer good law under 2010, or are you saying that this is something more different? I don't think, to the extent this court had already said that it has to be substantially the same fraud or transactions previously, I do think that that describes what the text of the statute says. And to say that this general allegation of fraud against USCC untied to any perhaps sham entity or untied to any of these other defendants that were part of the scheme, there was like this general modus operandi that USCC was following. That does violence to the text of the statute, which says substantially the same transactions. It just can't be that this general allegation of fraud covers substantially the same transactions, which didn't even occur until many years after that suit was just voluntarily dismissed. So it was your contention that that statutory language means that, let's suppose it was publicly disclosed like every single possible detail of the fraud, but up to year 2014 something. And then you, your clients disclosed to the government that the fraud continued in the same manner in 2015, that that would be outside the public disclosure bar because these are different transactions. I don't think that we're saying that if all the essential elements of this substantially same fraud had already been disclosed, continuing those things would fall outside of the statutory language. What I'm saying is that to the extent the prior disclosure disclosed that kind of fraud to set up a sham entity to obtain VIN credits, the fact that the SEC ultimately granted them and said, there's not enough here to think that King Street is a sham entity sort of diminishes that complaint even as the basis for these allegations of fraud that are alleged now, which aren't continuing frauds. And another way to think about it is to say that King Street, the FCC determined was not in fact sham, it was a legitimate designated entity. We have that, and that's a reasonable inference you can find the complaint. And because of that, it's via, but that doesn't mean that it could not then violate the other regulations from the FCC in its adjusted enrichment period and cause an FCA violation by hiding it from the SEC, which is exactly what we allege occurred in 2011 and 2012. And to the extent this court even thinks that the 2008 complaint does substantially allege the same frauds again, we have explained how Relator Mark O'Connor's own work that he voluntarily disclosed to the government prior to that unsealing makes him an original source of those allegations, and he'll always be an original source of those allegations. He didn't disclose to the government a different legal entity did, right, firm? No, your honor. And again, this is why we should be granted leave to replete if necessary. You know, again, this is an affirmative defense. So as this court sent it to chapel, we don't have to plead around an affirmative defense in the complaint. This was dismissed after one motion to dismiss with prejudice, with no leave to replete even though we asked for it. And if given the opportunity to replete, if this court does think it's important, we will be able to plead and then show to the other side. Mark O'Connor himself was sending communications to the government, voluntarily disclosing these allegations to the government in the lead up to the unsealing of that complaint when the government then asked the FCC to look at the allegations there in the partially unsealed complaint before making its determination. Did you raise this argument in the district court at O'Connor? I mean, isn't this argument forfeited? It is not forfeited for a couple of reasons, your honor. First of all, we not only say it in the sentence, in the first sentence of the text, how this was Relator Mark O'Connor's work, we then explain in a footnote with case citation, how a Relator's own work cannot make, cannot bar their own later complaint, right? So we definitely preserve the argument and we certainly preserve the claim that he was an original source. So any refinement of the argument on appeal is not forfeited. That's from the Supreme Court's decision in Citizens United and yes, E.V.S. Condito, it's a long running proposition, but the other reason is because, as we said, this is an affirmative defense and we have argued from the outset that from the face of the complaint, it must be that the plaintiffs have pleaded themselves out of being able to show that this isn't a public disclosure. The defendants then come and they say, well, the 2008 complaint under the firm O'Connor Lampert is Mark O'Connor and Lampert is a public disclosure. And there's nothing in the face of the complaint that suggests that Mark O'Connor did not, as part of that lawsuit, communicate these allegations to the government. Sure, but he was doing it in his capacity as counsel for a different relator. Mark O'Connor was not counsel to the law firm in that case, Your Honor. So it's actually not even accurate to say he was doing it as counsel to the relator. And again, all of that is supposition that is outside of the complaint or anything because- I'm sorry, who is the relator in the 2008? Mark O'Connor's prior titular law firm. Right, right. But the statute doesn't say you must be the relator to be an original source. The statute literally says you must to be an original source means you're just an individual who prior to the public disclosure has voluntarily disclosed to the government the information on which allegations or transactions in the claim are based. Mark O'Connor is an individual who disclosed these allegations to the government. There could be multiple original sources and there's a reason. He is, but he's also a partner in the firm that is seeking the bounty that comes from being a relator. So if your theory is, well, he, but he's also kind of off on his own doing this work in an individual capacity. And it would seem to be a conflict of interest among other things to set up his own relator complaint as opposed to that of his firm. You know, we're getting quite far afield from the allegations in the complaint, but I'll say, I'm not sure that conflict of interest is necessarily the, you know, that there's any conflict of interest between a now defunct law firm whose own prior complaint has since been dismissed and that can't pursue these allegations. And the reason Congress used this broad language about being an original source of the information is because the government contemplated that suppose that multiple individuals before the 2008 complaint had been unsealed had been communicating with the government about this. They would all be an original source and there's good reason for that. And the reason is, if as happened here, that complaint is dismissed, or for some reason the relator decides not to pursue it, someone else who can claim original source status can pick up the torch and continue with the case. That's exactly what Mark O'Connor did here. And there's no reason to add this, you know, a textual limitation to the language that Congress has modified three times in the history of this particular provision. It added it, it modified it in 1986. And because the sponsor of the AZ-6 amendments thought that the courts were being too strict about the language, they modified it again in 2011 to make it even, to make the public disclosure bar even narrower and the original source status broader. So what is the pleading burden on someone who's claiming to be an original source? I mean, what do they have to plead? They have to plead. I think that they have to plead that before the public disclosure, they had voluntarily disclosed to the government the information on which allegations or transactions in the claim are based. And the reason that alone is sufficient in this case, because the public documents that the defendants rely on are on their face. I mean, literally the law firm is in Mark O'Connor's own name. So it's not apparent on the face of the complaint or any of the documents that the defendants rely on that he is not an original source. And as this court said in DeChapel and it's other cases addressing affirmative defenses that we highlighted, defendants do not use the words affirmative defense one time in any of their briefing to dismiss at the 12B6 stage. And that's where we are on an affirmative defense. It has to be apparent from the face of the complaint. The plaintiffs cannot establish that they can defeat the affirmative defense. This may be a factual dispute. The jury will want to resolve or the court will want to resolve at a later stage after discovery, but certainly not at this stage, pleading stage have the plaintiffs pleaded themselves out showing they're an original source of the claims against King Street and the related defendants. You think it's clear that the 2010 amendment makes this into a merits issue rather than a jurisdictional issue? The language is it's a direction to the court. The court shall dismiss. And I know there are a lot of cases the last 15, 20 years saying don't overuse the J word, but a direction to the court is something that might feel jurisdictional. And so one way of reading this amendment is it's still jurisdictional for most purposes except the government can waive it by opposing. I am not aware of any legislative or statutory history case where Congress has taken the word jurisdictional out of the statute. And the court has said, nonetheless, it is still jurisdictional. That would seem to me to go quite against the mountain of authority you were alluding to earlier. And the circuit courts, this court's sister circuits have unanimously held that this change made it an affirmative defense. And I just, if this court were inclined to disagree with the other circuits, I don't think it should create a split in a case where the defendants have not made the argument. Mr. Kirk, even if the public disclosure bar is an affirmative defense, isn't the original source an exception to the affirmative defense on which the relators would bear the burden? That is also something no circuit court has held. I don't know how the circuits have sort of thought about it. They haven't just accepted that somebody was an original source kind of on their say-so. I have reviewed the circuit cases that we cite in our brief that defendants do not acknowledge that address this. And I haven't found a single one that says that does it in that stepped inquiry that Your Honor is suggesting. This would be the first courts to definitively so hold. And for the same reasons I was just answering Judge Katz's prior question, I don't think the court needs to even get there because the defendants simply do not address this argument at all in their briefing. We made it very clear under the standard of review in both of these appeals that this is now an affirmative defense that this court's sister circuits have unanimously so concluded. And the defendants had nothing to say in response. Except that you have failed to adequately show at this stage of the case the voluntary disclosure to the government, which is a little hard to make sense of if this is a merits defense on 12b-6. Makes perfect sense if it's still sort of jurisdictional in the sense I was asking about. So, you know, and that also is not an argument the defendants made. The defendants do not argue that the statute continues to be jurisdictional. And, but to the extent- No, but they say you have to show- They say we did not sufficiently plead that we voluntarily disclosed. We have the allegation that we voluntarily disclosed all of this to the government. They say that our private information. So they say that our allegations about having private information and alleging that we voluntarily disclosed it to the government prior to the suit being unsealed are insufficiently alleged. We don't see how they were insufficiently alleged. We allege we have private information that we gave to the government. We know that the government actually investigated these allegations long before the complaint was unsealed. And it's just hard to, you know, to suggest that they have pleaded themselves out of so showing. And that is why we would be totally fine with an order from this court saying, you know what, go back, add your allegations about how you voluntarily disclosed this information to the government and then establish that you're in fact original sources of the 2008 complaint. All right, we'll give you some time on rebuttal. Thank you. USCC Wyatts. Mr. Tulumelo. Yes, Your Honor. Good morning, Your Honors. Drew Tulumelo on behalf of the appellees. District court correctly dismissed the relator's second amended complaint under public disclosure bar because it alleges the same fraud against the same 10 defendants in the same auctions involving the same licenses as the 2008 complaint. What about this 2011 licensing agreement? I mean, that seems different because you could assume all the de facto control in the world or not. If there's a later agreement that triggers a different theory of disqualification, which is you've transferred too much spectrum, seems a little different to me. Yeah, Your Honor, a few responses to that. First, they're incorrect that a network sharing arrangement is disqualified, okay? The FCC amended its rules in 2015 to prospectively prohibit the network sharing agreements would have been prohibited prior to that time or- I'm sorry, but which reg is governed? I assume we all agree that at the relevant time, if there were a lease transferring more than 25% of any one license, that would disqualify the designated entity. Yes, but the network sharing agreement was and is not a lease. It was a agreement that would allow the use of King Street spectrum on a fee for service basis categorized by the FCC later in 2015 as a network sharing agreement. But even putting that aside, stepping back, the entire thrust of the 2008 complaint was that U.S. Sailor had set up each of the three designated entities as shams and fronts that would bid on credits or bid on spectrum licenses for the benefit of U.S. Sailor and that U.S. Sailor would use that spectrum in its discretion. That's set forth in the complaint. They repeatedly allege in the 2008 complaint that U.S. Sailor exercises de facto control over all three designated entities. And that's paragraph 64, 68, and 72 of the 2008 complaint. It specifically alleges that the ownership, financing, and control of all three were identical in all material respects. And the complaint alleges that post-award fraud was already occurring. And that's at JA-665 and 666. And it also specifically alleged that U.S. Sailor was following the same strategy for King Street. That's at JA-653. So under any plausible definition of substantially the same, the complaint, the Second Amendment complaints allegations are substantially the same as the 2008. And to the extent there's a temporal difference, a later in time continuation of the fraud, there are many, many D.C. circumstances that say later in time examples or continuations of fraud aren't enough to evade or circumnavigate the substantially the same requirement. Aren't those cases construing substantially similar rather than substantially the same? They are, but we think whether it's substantially the same or substantially the similar. Here you could, you have- When Congress changes it substantially the same, I'm sorry, from substantially similar to substantially the same, isn't that tell you that they want it to be kind of a more restrictive? Sure, I think whatever delta there is between substantially similar and substantially the same, we more than satisfy the same requirement because the options are the same. The 10 defense are the same. The fraud is the same. So there is no daylight between the allegations, the 2008 complaint and what you have before you here. I did wanna make sure I address a kind of recurring statement in both the argument and in the reply brief that, well, gee, if we just had the opportunity to amend and plead this, that we could do that. I mean, it's very well settled that you must make a request to the district court for leave to amend. And it is also very well settled that a bare bones request in an opposition to a motion to dismiss saying we would like to amend without any elaboration of what allegations would be added is not sufficient. The rule says you're supposed to attach the proposed amended complaint, doesn't it? Exactly, that's exactly right. Local rule 7.1 and 15.1 both make that clear in COOL versus MCI communications, 16 F third, 1271 in this court. And that is bread and butter everyday practice. The district courts of this circuit that you don't do drive by, oh, we can amend. We won't tell you what we will amend. Well, I mean, what did they want the district court to evaluate or to do? They did nothing. There was two and a half years they had while this in the face of our arguments that they, that the public disclosure bar applied and they did nothing to signal to the district court that there could be amendments that might change the outcome. This goes to voluntary disclosure, right? This goes to- To this point, amend in order to spell out that Mr. O'Connor disclosed to the government before the 2008 complaint. Yeah, well, it goes, it even goes backing up. It goes even to that he was an original source, which is not something even, but the district court could- Any of that, if this is now a non-jurisdictional defense, they can plead themselves out of court, but other than that, they don't have to anticipate the defense in their pleading. Your Honor, generally, let me take this in a few different ways. They never argued below that this was an affirmative defense that would have required a sort of- Do you agree it's now a merits issue rather than a jurisdictional issue past 2010? I think it likely is a merits issue, but it is, but for purposes of what we're talking about, which is pleading burden, I think it is very different than sort of some traditional affirmative defenses that are listed in Rule 8, like laches, because it is- The relator in the complaint has to plead out and satisfy Twombly and Iqbal and Rule 8 and maybe Rule 9 on the original source and voluntary disclosure issues. Subtle tweak on that, okay? Which is that the statutory command to dismiss the case, that even assuming it's an affirmative defense, merits defense, not jurisdiction, nothing has changed under the traditional rules that the court can consider items by judicial notice, items that are integral to the complaint. There's nothing that bars a district court at Rule 12b-6 from considering those. Now, if properly viewing all of those materials, it is obvious that the affirmative defense applies, then yes, there is a pleading burden on the plaintiff to come forward to claim the benefit of the statutory exception under the public disclosure bar. And that is what two district courts in this circuit have held. There's Judge Mehta in the Athena Construction Group case, trace that through, and Judge Leon following that case in United States Lozano. And the Eighth Circuit has specifically reached this issue. And as said, assuming it is perhaps even holding, even if it's not jurisdictional, post the 2010 amendment, courts still, and this is Amber Secchia, can still dismiss at the 12b-6 stage. If what? If the complaint pleads them out of court? No. Or? Yeah. Let me give you the, I just want to make sure I have triggered correct. Or judicially noticeable materials conclusively establish the defense with a high enough degree of certainty that we're comfortable doing it at an early stage? The latter, the latter, okay? And that also tracks this court's precedence with Title VII exhaustion, which there had been a long debate about whether exhaustion was jurisdictional or was merits. In Zipes, the Supreme Court said, hey, it's not jurisdictional, it's merits. And then this court in three cases, including, I would add, a case relater site as the proper standard of review, okay? Bowdoin versus United States, along with Saltz versus Lehman and Williamson versus Shalala, they make clear that if defendant meets its burden, this is talking about affirmative defenses, defendant bears the burden of pleading and proving it. If the defendant meets its burden, the plaintiff then bears the burden of pleading and proving facts supporting equitable avoidance of the exhaustion defense. And then in both the Shalala case and the Saltz case, the court affirmed dismissals under 12b-6 on the ground that the defendant had come forward and shown through the judicially noticeable and other materials that exhaustion had not been, the plaintiff had not exhausted and concluded that we believe the plaintiff has the burden of pleading and proving in the district court any equitable reasons for his failure to exhaust. Sorry, I don't see Shalala. Can you just give me your best case for the conceptual point from our court or the Supreme Court and then your best district court case or what best case applying this principle to this question? Bowdoin versus United States from the D.C. Circuit. On the conceptual point. Yeah, on the conceptual point. And I'd say Judge Mehta's case in Smith versus Athena Construction Group and Amber Secchia. But Judge Katz, if I could go one step forward, I think to make it further, to make the analysis even easier. Let's say that it is a full-blown deceptive kind of rule and we need to find something somewhere that absolutely negates and obliterates the plaintiff on the face of the complaint. Well, at footnote one of the second amended complaint, they made clear that the pre-2010 Act applies to the pre-2010 conduct. And remember that this, we're in 2024 now, but auction 58 was in 2005. Auction 65 was, 66 was in 2006. Auction 73 was in 2008. So when you look at their complaint, the five causes of action, conspiracy, making false claims in those auctions, using false records in those auctions, obtaining false government property when the licenses were awarded. So much of that conduct occurs before 2010, when they themselves plead that the prior version of the statute applies. And that is why, frankly, they took on the burden of trying to plead that they were original sources. It's why they, in my view, filed in the Western District of Oklahoma, which has like zero connection to this district to get as far away as possible from that earlier complaint, because they were trying to sort of evade the preclusive impact of the earlier public disclosure. So even going all the way, I think it is satisfied. All right. If you have anything else that you didn't cover or want to cover, I'll give you a minute. Okay. I don't, I just haven't committed to memory. I think it's Meacham is the Supreme Court case that holds that the party seeking the benefit of a statutory exception has the burden to pleading. That's the last point I would close with. Thank you. Thank you. All right. Mr. Woofter, you were out of time, but we'll give you two minutes. I'll be very brief, Your Honor. I just want to make a couple of points. The first point is that when Judge Katsas, you asked my colleague on the other side about the 2011 agreement, his response is that our allegations about what that agreement shows are factually inaccurate. That is obviously not something that the court should be resolving at the 12B6 stage. Two, a lot of the argument was centered on this pleading burden. On that, I mean, I'm not really comfortable trying to figure out whether or not there was or wasn't a lease within the meaning of the regs, but whether that was the same kind of thing alleged in the 2008 complaint, I think we can get our arms around. I think that's right. But that is not what my colleague's response was. And two, we absolutely argued to the district court multiple times that this is now an affirmative defense. And the reason you were asking about Shalala and not seeing it in the briefings is because, again, my colleagues on the other side, nowhere addressed this. And they could have, and we never had a chance to respond with whether these Title VII or other reticulated statutory or regulatory regime pleading burden, shifting things apply in this context. And as to whether or not this is a full-blown DeChapel sort of inquiry, DeChapel very clearly says that even after Twombly, you just don't need to plead around an affirmative defense. And we never got the chance. And the reason that we never even fought to make the kinds of local Rule VII attachments or anything like, we had no idea that the district court was gonna ignore our argument that, look, setting aside that it's contrary to logic, fact, and law, that Mark O'Connor's own prior suit could disclose, could bar his later suit as parasitic. The district court said nothing about it. So we didn't know that we would have to say something about how apparently our allegation that this was voluntarily disclosed was insufficient. And the last point I wanted to make is that my friend on the other side said nothing about the materially ads inquiry. We explained in our briefing about how, in all events, both of the relators here are original sources because the later allegations about the 2011 transfer not only could influence the government decision on this, it did, the government investigated. And through that investigation, found this secret 2011 agreement and gave it to us. And that itself is sufficient to show that there are original sources under the second path, original source status. And my friend on the other side has not said anything about it in this oral argument. Thank you. Thank you, case under advisement.
judges: Wilkins, Katsas, Rao